FILED
SUPERIOR COURT
OF GUAM

2018 FEB -5 AM 11: 59

CLERK OF COURT

By:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JUANITA M. URQUHART,<br><br>                         Plaintiff,<br><br>      vs.<br><br>JOHN GODDARD,<br><br>                     Defendant. | Superior Court Case No. <u>CV0905-15</u><br><br><br>**DECISION AND ORDER**<br>**re**<br>**MOTIONS FOR**<br>**SUMMARY JUDGMENT** |
| ROBERT SALAS,<br><br>                    Intervenor-Defendant. | |

The Court here considers separate motions for summary judgment filed by Plaintiff Juanita M. Urquhart and Intervenor-Defendant Robert Salas.[1] Having evaluated the applicable law, the record, and the parties' arguments, the Court DENIES Salas' Motion for Summary Judgment, finding a genuine issue of material fact exists as to when the applicable statute of limitations began to run. Moreover, the Court DENIES Urquhart's Motion for Summary Judgment, but finds no controversy as to the validity of the purported deed.

## I.   ISSUES PRESENTED

The Court considers the following issues:

As presented in Salas' Motion for Summary Judgment:

1. Is Urquhart's action governed by a statute of limitation?
2. If so, which statute of limitation applies?

---

[1] Leevin Camacho represents Urquhart; Mitchell Thompson of Thompson Thompson & Alcantara, P.C. represents Salas.

ORIGINAL

3. Is there a genuine issue of material fact as to whether Urquhart's case barred by the applicable statute of limitation?

As presented in Urquhart's Motion for Summary Judgment:

1. Whether there are any genuine issues of material fact concerning whether Pauline Materne's handwritten note constitutes a deed?
2. Whether the spendthrift clause in Pauline Materne's Revocable Living Trust prohibited Trust beneficiaries from transferring their interests?

## II.   PROCEDURAL BACKGROUND

Urquhart filed her Complaint on September 21, 2015. The Complaint raises three causes of action: (1) Proof of Execution of Instrument Under 21 GCA § 33122; (2) Quiet Title; and (3) Declaratory Relief under 7 GCA § 26801. The first cause of action seeks to prove that Urquhart's stepmother, Pauline Materne, signed a handwritten note thus "entitling it to be recorded in the records of the Department of Land Management." Compl. at 4 (Sep. 21, 2015). The second cause of action seeks a determination that the note constitutes a deed. The Court has stayed the quiet title action. *See* Dec. and Order re Mot. Joinder of Necessary Parties and Mot. Scheduling Conf. (Apr. 28, 2017). The declaratory relief action asks the Court to declare the rights and duties of Urquhart with respect to her interests in the Nimitz Hill properties described more fully below. Compl. ¶¶ 30-31.

## III.   UNDISPUTED FACTS

The Court finds the following facts to be undisputed:

1. Juan Materne is Urquhart's grandfather. Subsequent to Juan Materne's passing in 1980, the Court probated his Estate. In its Order Settling Final Account and Report of Executor and of Final Distribution Under Will, the Probate Court ordered that "Any and all right, title, and interest in and to any real property of the Decedents that may be discovered after the date of this Order" be distributed 3/14 to the Estate of Dingo Materne. Reply

ORIGINAL

Mem. in Support of Intervenor-Def.'s Mot. Summ. J., App. A at 3-4 (Nov. 22, 2017).

2. Dingo Materne is Urquhart's father. Dingo Materne was married to Pauline Materne. They had three children, including Juanita Urquhart and John Materne.

3. Dingo Materne passed away in 1997. Compl. ¶ 6. His will bequeathed all property to Pauline Materne. Compl. ¶ 24; Req. Jud. Not., Ex. A (Jan. 11, 2016) (*In re Dingo C. Materne*, PR0016-98, Decree of Final Distribution).

4. On May 15, 2001, Urquhart recorded Claims of Interest asserting that she was heir to the Estates of Juan Materne and Dingo Materne, and that as heir she had an interest in Lots 246, 246-1-1, and 246-2, 264, and Lot 265-1 (also known as "Nimitz Hill Properties"). Decl. Juanita M. Urquhart in Support of Opp'n to Mot. Summ. J., att. (Nov. 14, 2017).

5. In 2003, the Guam Ancestral Lands Commission returned the Nimitz Hill Properties to the estate of Juan Materne. Compl. ¶ 8; Memo. P. & A. in Support of [Intervenor-Def.'s] Mot. Summ. J. at 1.

6. After the return of the Nimitz Hill Properties, another probate case for Juan Materne was opened. *In re Juan M. Materne*, PR0118-03.

7. PR0118-03's Petition for Letters Testamentary referenced the return of lands from the Guam Ancestral Lands Commission as the basis for the case. PR0118-03 (Pet'n Letters Testamentary, Sep. 9, 2003).[2] PR0118-03's petitioners submitted Quitclaim Deeds for the properties, recorded in 2003.

8. The probate Petition lists Urquhart as an heir to Juan Materne, and a Declaration of Mailing indicates service of the PR0118-03 petition on Urquhart. PR0118-03 (Decl.

---

[2] The Court takes limited judicial notice of the filings in PR0118-03, as discussed elsewhere in this decision. *See Taitano v. Calvo Fin. Corp.*, 2009 Guam 9 ¶ 31 (a court may take judicial notice of matters of public record).

ORIGINAL

Mailing, Oct. 16, 2003).

9. Urquhart has produced a handwritten note dated January 14, 2004, which states: "I, Pauline R. Materne do hereby surrender whatever interest I am entitled to the Former ComNav. Officers housing on Nimitz Hill, to our daughter Juanita 'Materne' Urquhart. /s/ Pauline R. Materne." Compl. Ex. A. Urquhart testified at her deposition that Pauline Materne did not want the property and therefore conveyed the property to Urquhart. Decl. Cecille Flores, Ex. A at 13 (Oct. 17, 2017).

10. Urquhart witnessed Pauline Materne write and sign the note. *Id.* at 13-14. Pauline Materne handed the note to Urquhart, who then stored it. *Id.* at 14-15.

11. On April 29, 2004, Pauline Materne executed a will. Decl. Mitchell Thompson, Ex. B (May 27, 2016). Pauline's will transferred all property to her trust, which she created in 1999.

12. Pauline executed a First Amendment to Trust on August 16, 2005, which contains a spendthrift provision. Decl. Mitchell Thompson, Ex. B at 30. The First Amendment distributed, after disposition of cash, 25% of the remainder of her estate to Urquhart.

13. Although Urquhart was originally listed as an heir to Juan Materne in PR0118-03, she was no longer listed as an heir in a January 11, 2005 Final Account for Settlement and Petition for Distribution. Instead, the Estate of Dingo Materne, not listed in the original Petition, was scheduled to receive a ⅙ distribution. PR0118-03 (Final Account Settlement and Pet'n Distribution at 4, Jan. 11, 2005). A Declaration of Mailing indicates that on or about February 11, 2005, Urquhart was mailed notice of the Final Account for Settlement and Petition for Distribution. PR0118-03 (Decl. Mailing, Mar. 18, 2005).

14. In 2006, Pauline Materne passed away.

ORIGINAL

15. On or about July 26, 2012, the Probate Court issued an Order recognizing that Lots 246, 264, and 265 were assets of Juan Materne's Estate. That Order subsequently distributed to the Estate of Dingo Materne "Lot 246-REM-2; Lot 246-REM-6; Lot 246-REM-9; ⅛th Undivided Interest in Lot 246-REM-8; and ⅛th Undivided Interest in Lot 246-REM-10." Req. Judicial Not., Ex. B (Jan. 11, 2016) (PR0118-03 (Order and Decree Settling Final Accounting and Report of Administration and Final Distribution)).

16. Despite the representations made in the Declarations of Mailing, Urquhart contends that she did not know her father's estate received the Nimitz Hill Properties until 2012. She claims she learned of this fact through a cousin. Decl. Cecille A. Flores, Ex. A at 19-20.

17. Salas claims John Materne conveyed his interest in the Nimitz Hill Properties to Salas. *See* Intervenor-Def. Robert Salas' Answer to Compl. (Jan. 13, 2017).

## IV. **SUMMARY JUDGMENT STANDARD**

Urquhart and Salas both seek relief under Guam Rule of Civil Procedure 56. "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." GRCP 56(a). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." GRCP 56(c) (emphasis added).

A genuine issue exists if there is "sufficient evidence" which requires a fact-finder to resolve a factual dispute. *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7. Such

ORIGINAL

dispute must concern a material fact, defined as a fact "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Id.* To determine whether summary judgment is appropriate, "the court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Stated simply, there is a trial issue if there is sufficient evidence for a jury to return a verdict in the non-moving party's favor." *Kim v. Hong*, 1997 Guam 11 ¶ 8 (citing *Anderson*, 477 U.S. at 250).

## V.   SALAS' MOTION FOR SUMMARY JUDGMENT

Statutes of limitation "come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate . . . . [T]he history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." *Duty v. Abex Corp.*, 263 Cal. Rptr. 13, 18 (Ct. App. 1989). In interpreting a statute of limitations, a Court gives effect to the statute's "plain meaning." *Id.* at 16; *Macris v. Swavely*, 2008 Guam 18 ¶ 17 ("the Court must base its decision on the statute's plain meaning and the legislature's intent"). Where the meaning of a statute of limitation is clear, "it is the function of this court to apply the statute as written." *Blakey v. Super. Ct.*, 200 Cal. Rptr. 52, 57 (Ct. App. 1989); *O'Neill v. Tichy*, 25 Cal. Rptr. 2d 162, 164–65 (Ct. App. 1993). "Absent clear legislative intent to the contrary, the plain meaning prevails." *Sumitomo Constr. Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17.

The Guam Legislature determined that *all* civil actions be attached to a limitations period: "Civil actions, *without exception*, can only be commenced within the period prescribed in this Chapter, after the cause of action shall have accrued, unless where, in special cases, a

ORIGINAL

different limitation is prescribed by law." 7 GCA § 11101 (emphasis added). Reading this statute plainly, the Court must apply a limitations period to each of Urquhart's claims.

Salas proposes that Urquhart's causes of action fall under the four-year "catch-all" statute of limitations (7 GCA § 11312), and except for arguing that the Court need not apply a limitations period, Urquhart does not propose any different statute of limitations applies. Finding that no other statute of limitations applies to an action for proof of an instrument or for declaratory relief, the Court determines that the four year limitations period under section 11312 applies to Urquhart's claims.

The Court next focuses on when the statute of limitations began to run. The "statute of limitations will begin to run when the plaintiff suspects or should suspect that [her] injury was caused by wrongdoing, that someone has done something wrong" to her. *Custodio v. Boonprakong*, 1999 Guam 5 ¶ 27. Once a "plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue," she must decide whether to file suit or sit on her rights. *Id.*

The Court finds that Urquhart had enough reason to sue once she both knew or should have known that the Nimitz Hill Properties were being returned and gained Pauline Materne's interest in the properties. The earliest evidence presented which indicates when Urquhart knew of the property return is the existence of PR0118-03, initiated in order to distribute the Nimitz Hill Properties. Further requiring Urquhart's need to take action, PR0118-13 originally recognized her purported interest in the Nimitz Hill Properties but omitted her as a direct heir in later pleadings. In other words, by the time of the proposed distribution of PR0118-03 in 2005, Urquhart had reason to act to protect her interest in the properties.

However, the Court finds that a genuine issue of material fact remains on when Urquhart gained enough information to start the limitations clock. On one hand, by around February 11,

ORIGINAL

2005, Urquhart knew or should have known she had a protectable interest in the Nimitz Hill Properties because: (1) she filed Claims of Interest; (2) she knew that all of her father's interest in the properties transferred to Pauline Materne; (3) in the January 14, 2004 handwritten note, Pauline Materne transferred all her interest in the properties to Urquhart; and (4) she had notice of the probate's intended distribution to the Estate of Dingo Materne. Under this scenario, Urquhart should have taken action to assert and protect her interest in the Nimitz Hill Properties within four years of the date of the notice of the proposed distribution, February 11, 2005.

However, Urquhart denies having knowledge of PR0118-03 until sometime in 2012. If she had no knowledge of the return of the lands from the Ancestral Lands Commission, and no knowledge of PR0118-03, then she had no reason to believe her claim had ripened. Ignorance of the return of the lands until 2012 gives Urquhart no incentive to prove the note to be a deed, or to seek a declaration of her rights. Under this scenario, the September 21, 2015 Complaint remains timely.

Even though the Court may take judicial notice of court filings, "the more critical an issue is to the ultimate disposition of the case, the less appropriate judicial notice becomes." *Taitano v. Calvo Fin. Corp.*, 2009 Guam 9 ¶ 31. While the Court here has taken judicial notice of the filings in PR0118-03, the Declarations of Mailing to Urquhart cannot be relied upon to establish Urquhart's knowledge, a central issue before the Court. A fact-finder must assess whether Urquhart knew of the return of the Nimitz Hill property and its intended disposition, whether in 2004, 2005, 2012, or some other time.

The Court rejects Salas' proposal to deem the statute to have run even earlier, such as at the closing of Juan Materne's first probate, or when Urquhart filed her Claims of Interest, or even when Pauline Materne delivered her note. There is no evidence that Urquhart knew or should

ORIGINAL

have known of the return of the lands until, at the earliest, the filing of PR0118-03. Even then, she did not receive her direct interest until Pauline Materne signed the note. Moreover, the PR0118-03 Petition lists Urquhart as a direct heir to receive property from the Estate of Juan Materne. It is only until 2005 that she is omitted as an heir, and the Estate of Dingo Materne is listed as an heir. It is at that moment that Urquhart--if in fact she received notice of the proposed distribution--had notice that her property interests were at stake.[3]

The Court also rejects Urquart's proposal to deem the statute to have run in 2012 in the event she had awareness of the PR0118-03. If Urquhart had notice of PR0118-03 earlier than 2012, then she had enough facts and incentive to bring her claims.

Because it remains an issue of fact as to when Urquhart knew of PR0118-03, summary judgment must be denied as to Salas' argument on the statute of limitations.

## VI.   URQUHART'S MOTION FOR SUMMARY JUDGMENT

### A.  Establishing a Deed

Urquhart claims that she has established all requirements for an effective deed: a (1) grantor, (2) grantee, (3) writing and subscription, (4) delivery and (5) acceptance. In its Opposition and as confirmed at the Motions hearing, Salas stated that other than the statute of limitations, he had no specific defense to the validity of the deed.

The Court finds that Urquhart has in fact established an effective deed. The handwritten note indicates a grantor, Pauline Materne, and a grantee, Urquhart. The note is in writing, and Urquhart has provided sufficient authentication of Urquhart's handwriting. Urquhart also

---

[3] Salas asks the Court to find that the 2012 distribution contradicts the Juan Materne's original probate distribution. The Court finds that this case is not the proper forum to consider an invalidation of PR0118-03. Moreover, invalidating the PR0118-03 proceedings has no effect on the Court's statute of limitations analysis.

ORIGINAL

established that Materne delivered the note to Urquhart, and Urquhart accepted it. These facts are undisputed.

Although Urquhart has established the existence of a valid deed, which is not in dispute, the Court hesitates to grant summary judgment because her action may be barred by the statute of limitations. As discussed earlier, all civil actions "without exception" must be brought within an applicable limitations period. While this may seem harsh, it is consistent with the Guam Supreme Court's enforcement of limitations periods "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Taitano v. Calvo Fin. Corp.*, 2008 Guam 12 ¶ 55 (citing *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944)). This case exemplifies the need to file a timely action. For example, had Urquhart known of PR0118-03 and filed her action upon receipt of Pauline Materne's note shortly thereafter, Pauline Materne may have still been alive to testify in such action, and Juan Materne's probate court distribution could have been addressed. Moreover, these issues could have also been addressed earlier in Pauline Materne's probate proceedings, long before Salas purchased John Materne's interest.

Because it remains an issue of fact as to whether Urquhart has brought a timely action, the Court must deny her summary judgment motion. However, under Rule 56(d) the Court may "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." The Court hereby finds that the January 14, 2004 handwritten note from Pauline Materne to Urquhart constitutes a valid deed, and that such issue stands without substantial controversy.

**B. Relevance of the Trust**

ORIGINAL

Urquhart asks the Court to enforce the Pauline Materne Revocable Living Trust spendthrift provision which prohibits beneficiaries from voluntarily transferring their interests. In opposition, Salas argues that a spendthrift clause in a revocable trust is ineffective upon the trustor's death. Salas also argues that in its Decision and Order concerning his Motion to Intervene, the Court already determined that Salas had a protectable interest.

In that Decision and Order, the Court relied on the same documentation that the Court now relies upon, specifically, Pauline Materne's probate court documents submitted by Attorney Thompson. For the Motion to Intervene, the Court determined that Salas' protectable interest derived from that purchased from John Materne. The Court also noted that the "validity of the handwritten note and the legal consequences that may follow are two factors that greatly affect [Salas'] interest." Dec. and Order at 8 (Jan. 5, 2017). In other words, the Court noted that Urquhart's action affected an interest held by Salas, thus, Salas had a right to intervene.

However, now having taken a closer look at Pauline Materne's estate documents in the context of summary judgment, and the chronology of those documents, the Court questions the relevance of Pauline Materne's Revocable Living Trust. Materne created her Trust in 1999, however, nothing indicates what property, if any, she transferred into the Trust. According to the Trust, the "trust estate" consists of property listed in the Trust's Schedule A and "any property hereafter transferred to the trust by the Trustor, her will, her attorney-in-fact or conservator, or as pension benefits or insurance proceeds, or from any other person or source." Decl. Mitchell Thompson, Ex. B at 23. Schedule A to the Trust, however, lists no assets, and no other evidence has been provided that demonstrates a transfer of the Nimitz Hill Properties into the Trust prior to the January 14, 2004 conveyance to Urquhart. Decl. Mitchell Thompson, Ex. B at 35. Plainly read, Pauline Materne's Trust did not contain assets until the First Amendment in 2005.

ORIGINAL

Furthermore, while Pauline Materne executed a Pour-Over Will bequeathing her property into her Trust, the only Will provided to the Court is dated April 29, 2004.[4]  In other words, Pauline Materne executed this Will three months *after* she executed a valid deed to Urquhart. With the evidence presented to the Court, no evidence supports a transfer of the Nimitz Hill Properties into Pauline Materne's Trust.

The Court therefore DENIES Urquhart's Motion for Summary Judgment because Urquhart fails to demonstrate a link between the Trust and the Nimitz Hill property.  The Court recognizes that this analysis may hold implications broader than the spendthrift clause or issues raised by either party.  The Court therefore makes clear that its denial of Urquhart's Motion pertains to the limited issue of the spendthrift clause.

## VII.    CONCLUSION AND ORDER

The Court DENIES Salas' Motion for Summary Judgment, finding that a genuine issue of material fact exists as to whether or not Urquhart filed a timely action.

The Court DENIES Urquhart's Motion for Summary Judgment but finds that Pauline Materne executed a valid deed and conveyed her interests in the Nimitz Hill Properties to Urquhart.  Summary judgment on her claims, however, is improper until resolution of the limitations issue.  The Court also DENIES Urquhart's Motion for Summary Judgment on the spendthrift clause.

The Court reminds the parties of the February 28, 2018 Pretrial Conference.

SO ORDERED this 5th day of February 2018.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

SERVICE VIA COURT bOX
I acknowledge that a copy    e
original heret  was     ed in the
court box of:

Leevin  Campos

Thompson, Thompson, DiCastone

Date: 2|5|18  Time: 12:00

Deputy Clerk, Superior Court of Guam

[4] At the hearing, Salas posited that Pauline Materne executed a Will in 1999.  However, the Court received no evidence to support a will existing earlier than April 29, 2004.

ORIGINAL